UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RAMON ANTONIO DUARTE-CERI,

                        Petitioner,

v.

JANET NAPOLITANO, Secretary,
  Dept. of Homeland Security,[1]

                        Respondent.

**REPORT
and
RECOMMENDATION**

**07-CV-00500A(F)**

---

APPEARANCES:        RAMON ANTONIA DUARTE-CERI, *Pro Se*
                              A37161007
                              Buffalo Federal Detention Center
                              4250 Federal Drive
                              Batavia, New York 14020

                              KATHLEEN M. MEHLTRETTER
                              Acting United States Attorney
                              Attorney for Respondent
                              GAIL Y. MITCHELL
                              Assistant United States Attorney, of Counsel
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202

## **JURISDICTION**

Petitioner, proceeding *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241, on June 27, 2007, in the Eastern District of New York. On July 25, 2007, the matter was transferred to the Western District of New York. On April 10, 2008, the case was referred to the undersigned by Honorable Richard J.

---

[1] Pursuant to Fed.R.Civ.P. 25(d)(1), Secretary of Homeland Security Janet Napolitano is automatically substituted for former Secretary of Homeland Security Michael Chertoff. The court further notes that the person with direct control over Petitioner's detention, Charles Mule, Facility Director for the Buffalo Federal Detention Facility, is the proper respondent in this habeas proceeding.

Arcara on April 10, 2008, for all pretrial matters.

# BACKGROUND and FACTS[2]

Petitioner Ramon Antonio Duarte-Ceri ("Petitioner" or "Duarte-Ceri"), was born on June 14, 1973, in the Dominican Republic, and entered the United States as a lawful permanent resident on December 6, 1981. On June 14, 1991, Petitioner's eighteenth birthday, Petitioner's mother, Carmen Duarte, became a naturalized United States citizen.

On June 15, 1994, Petitioner was convicted in New York Supreme Court, Queens County, of Attempted Criminal Sale of a Controlled Substance in the third degree, in violation of New York Penal Law ("N.Y. Penal Law") § 110-220.39. Petitioner, by Order to Show Cause, dated April 14, 1995, charging Petitioner was subject to removal from the United States pursuant to Immigration and Nationality Act ("INA") § 241(a)(2)(B)(I), as an alien convicted of a controlled substance violation, as well as INA § 241(a)(2)(A)(iii), as an alien convicted of an aggravated felony offence, and was placed in administrative immigration removal proceedings ("the removal proceedings"). On February 24, 1997, an immigration judge ("IJ"), ordered Duarte-Ceri removed from the United States to the Dominican Republic ("the IJ's decision"), based on Petitioner's record of an aggravated felony conviction. Duarte-Ceri appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which, on September 5, 2001, dismissed the appeal on the merits.

---

[2] The Facts are taken from the pleading and motion papers filed in this action.

On August 11, 2004, Petitioner was convicted of Criminal Sale of a Controlled Substance in the fifth degree, in violation of N.Y. Penal Law § 220.31, for which Petitioner was sentenced to 2 ½ to 5 years imprisonment.

On October 20, 2004, Petitioner filed an N-600 "Application for a Certificate of Citizenship" ("N-600 application"), with the Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), California Service Center,[3] asserting Petitioner is a United State citizen derivative of Petitioner's mother's naturalization on June 14, 1991, Petitioner's eighteenth birthday, given that Carmen Duarte was naturalized at 9:00 A.M., Petitioner, who was purportedly born at 9:00 P.M. on June 14, 1973, did not turn 18 until 12 hours after his mother's naturalization.

On November 15, 2004, Petitioner, then represented by Ismael Gonzalez, Esq. ("Gonzalez"), filed a motion seeking to reopen the removal proceedings and to stay deportation pending resolution of the motion to reopen, asserting to the BIA for the first time that Petitioner is a United States citizen based upon his mother's naturalization on Petitioner's eighteenth birthday. On January 26, 2005, the BIA granted the motion to reopen and remanded Petitioner's case to the IJ for further review.

Following the conclusion of the remanded removal proceedings, the IJ, on July 20, 2005, denied Petitioner's request to terminate removal proceedings, finding that Petitioner had failed to demonstrate by clear and convincing evidence that Petitioner, prior to attaining age 18, had derived United States citizenship based upon his mother's naturalization on Petitioner's eighteenth birthday, *i.e.*, June 14, 1991. On August 19,

---

[3] Although it is not clear from the record why Petitioner's N-600 application was filed with the California Service Center of the USCIS, Respondent does not dispute that such filing was proper.

2005, Petitioner appealed the IJ's decision to the BIA which, on November 21, 2005, dismissed the appeal ("November 21, 2005 decision"), thereby rendering the IJ's decision a Final Order of Removal pursuant to 8 U.S.C. § 1101(c)(47)(B) (providing that a removal order becomes final upon the earlier of the BIA's determination affirming such order or the expiration of the period in which the alien may seek the BIA's review of such order).

On January 11, 2006, Petitioner filed in the Second Circuit Court of Appeals a petition seeking review of the BIA's November 21, 2005 decision dismissing his appeal ("petition for review"). The Final Order of Removal was stayed pending the Second Circuit's decision on the petition. On May 8, 2006, Petitioner was released from the custody of the New York Department of Correctional Services, and was taken into custody by U.S. Immigration and Customs Enforcement ("ICE"), where Petitioner remains held at the Buffalo Federal Detention Facility in Batavia, New York, pending his removal to the Dominican Republic. On June 15, 2006, the Second Circuit dismissed with prejudice the petition for review, and issued an order dismissing as moot the motion to stay.

On June 30, 2006, ICE sent presentation packets to the Consulate General of the Dominican Republic ("the Dominican Consulate") in New York, New York, requesting issuance of a travel document to facilitate Petitioner's removal to the Dominican Republic. On August 26, 2006, the USCIS denied Petitioner's N-600 application, filed October 20, 2004, based on Petitioner's failure to establish United States citizenship derivative of his mother's naturalization prior to Petitioner's eighteenth birthday. Petitioner timely appealed the decision to the USCIS Administrative Appeals

4

Office ("AAO").

On September 11, 2006, Petitioner filed with the BIA a motion to reopen and reconsider his deportation proceedings. On October 5, 2006, DHS made a second request to the Dominican Consulate for issuance of a travel document to facilitate Petitioner's removal to the Dominican Republic. On October 16, 2006, the BIA denied as untimely filed Petitioner's motion to reopen and reconsider his deportation proceedings. On November 2, 2006, the Dominican Consulate advised ICE that no travel documents for Petitioner would issue until the appeal of Petitioner's N-600 application was resolved. In accordance with immigration regulations, on December 20, 2006, ICE served Petitioner with a Notice to Alien of File Custody Review.

On January 25, 2007, ICE requested assistance from DHS Headquarters Travel Document Unit ("HQTDU"), in obtaining a travel document for Petitioner. On February 6, 2007, ICE, after completing a 90-day File Review of Petitioner's custody, notified Petitioner that ICE intended to continue Petitioner's detention. On April 16, 2007, because ICE had yet to receive from the Dominican Consulate any travel document for Petitioner, ICE referred the matter to ICE Headquarters Custody Determination Unit ("HQCDU"), for a 180-day review in accordance with ICE regulations.

On May 21, 2007, the AAO denied Petitioner's appeal of the USCIS's August 26, 2006 denial of Petitioner's N-600 application. On May 22, 2007, HQCDU issued a Decision to Continue Detention which was served on Petitioner on May 23, 2007.

On June 27, 2007, Petitioner filed the instant habeas petition (Doc. No. 5-2) ("petition"), pursuant to 28 U.S.C. § 2241, in the Eastern District of New York. On July 5, 2007, Respondent was ordered to show cause why the writ of habeas corpus should

5

not issue (Doc. No. 2) ("Order to Show Cause"), and, on July 10, 2007, Respondent filed a Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus (Doc. No. 5-4) ("Respondent's Memorandum"), asserting that venue in the Eastern District of New York was improper. By order filed July 25, 2007, the action was transferred for improper venue to this court given that jurisdiction over challenges to physical confinement lies only in the district of confinement.

On August 17, 2007, ICE sent a new presentation packed to the Dominican Consulate advising that Petitioner's citizenship appeal had been denied, and requesting issuance of a travel document for Petitioner's removal to the Dominican Republic.

On October 16, 2007, Respondent filed an Answer and Return to the Petition (Doc. No. 11) ("Answer and Return"), asserting this court has jurisdiction only over Duarte-Ceri's challenge to his continued detention in custody, but is without jurisdiction to review the BIA's denial of his N-600 application seeking derivative citizenship. The Answer and Return is supported by the attached Declaration of United States DHS, ICE Deportation Officer George F. Scott ("Scott") (Doc. No. 11-2) ("Scott Declaration"). Also filed on October 16, 2007 is Respondent's Memorandum of Law in Opposition to the Petition (Doc. No. 12) ("Respondent's Memorandum"), and Exhibit A (Doc. Nos. 13 and 14) ("Respondent's Exh. A").

By letter to the undersigned dated November 6, 2008 (Doc. No.18) ("November 6, 2008 letter"), Respondent advised that the Dominican Consulate continued to refuse to issue a travel document for Petitioner until Petitioner's pending habeas matter is resolved. In response to the November 6, 2008 letter and in further support of the petition, Petitioner filed on April 11, 2008, a Submission of Legal Basis to Terminate

Removal Charges (Doc. No. 16) ("Petitioner's Response"). Attached to Petitioner's Response is an affidavit from Petitioner's mother, Carmen Duarte, explaining that her naturalization application was filed on December 13, 1990, and that Petitioner was to appear to complete his rights under former INA § 321(a)(3), 8 U.S.C. § 1432(a),[4] but that Louise Smith, the immigration officer who processed Carmen Duarte's naturalization application neglected to call Petitioner to appear for adjudication of derivative citizenship. By letter to the undersigned dated November 17, 2008 (Doc. No. 17), Petitioner advised of a new motion for reconsideration Petitioner filed with the BIA on November 10, 2008. Oral argument was deemed unnecessary.

Based on the following, the petition should be DISMISSED.

## DISCUSSION

Petitioner's habeas petition challenges his continued detention in ICE custody, as well as the USCIS's denial of Petitioner's N-600 Application for Certificate of Citizenship. Respondent maintains there is no merit to Petitioner's challenge to his continued detention in ICE custody, and that this court lacks jurisdiction over Petitioner's citizenship claim. Respondent's Memorandum at 1-2.

**1.      Derivative Citizenship**

With regard to Petitioner's citizenship claim, "[a]n alien may obtain judicial review of his claim of derivative citizenship in two ways: by raising it during the course of

---

[4] INA § 321 was repealed in 2000.

7

removal proceedings or by appealing the final administrative denial of the alien's [N-600] application for a certificate of citizenship." *Patino v. Chertoff*, 595 F.Supp.2d 310, 313 (S.D.N.Y. 2009) (bracketed material added) (citing *Hutchinson v. Mukasey*, No. 07 Civ. 10716, 2007 WL 4323006, at *2 (S.D.N.Y. Dec. 10, 2007) (citing 8 U.S.C. §§ 1252(b) and 1503(a))). "An alien may obtain district court review of the final denial of his [N-600] application for a certificate of citizenship pursuant to 8 U.S.C. § 1503(a) ("§ 1503(a)), by filing a declaratory judgment action for a judgment declaring him a national." *Patino*, 595 F.Supp.2d at 313 (bracketed material added). The statute, however, does not allow such action to be brought where "the issue of such person's status as a national of the United States . . . arose by reason of, or in connection with any removal proceedings," or "is in issue in any such removal proceeding." 8 U.S.C. § 1503(a).[5] In the instant case, Petitioner's requested relief for a declaration that Petitioner is a United States national derivative of his mother's naturalization on Petitioner's eighteenth birthday is not available from this court.

In particular, although Petitioner has denominated this action as seeking habeas corpus relief, insofar as Petitioner seeks a judicial declaration that he is a United States national, such relief is available from this court only pursuant to § 1503(a). Petitioner's N-600 application, filed October 20, 2004, was filed more than three years after the BIA's September 5, 2001 dismissal of the IJ's decision, initially made on February 24,

---

[5] Section 1503(a) specifically provides that any person within the United States who claims a right or privilege as a United States national and is denied such right or privilege by any department or independent agency on the ground that such person is not a national may commence an action pursuant to 28 U.S.C. § 2201 against the head of such department or independent agency seeking a judgment declaring the person is a United States national, unless such claim "(1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding."

1997, ordering Petitioner removed to the Dominican Republic based on Petitioner's record of aggravated felony convictions.[6] That Petitioner applied for a Certificate of Citizenship only after removal proceedings had been commenced and initial determinations unfavorable to Petitioner's remaining in the United States were made precludes Petitioner from raising his citizenship claim in this court. 8 U.S.C. § 1503(a); see *Patino*, 595 F.Supp.2d at 313-14 (holding that although the plaintiff was not yet subject to removal proceedings when the complaint seeking a declaration of citizenship pursuant to 8 U.S.C. § 1503(a) was filed, the assertion within the complaint that the action was commenced in anticipation of impendent removal proceedings established the claim arose in connection with anticipated removal proceedings); *Duran v. Reno*, 1998 WL 54611 at * 7 (S.D.N.Y. Feb. 10, 1998) (holding district court lacked jurisdiction over plaintiff's claim of citizenship filed pursuant to 8 U.S.C. § 1503(a), because the plaintiff commenced action after being placed in deportation proceedings), *aff'd*, 165 F.3d 13 (2d Cir. 1998) (Table). As such, Petitioner cannot seek a declaration of citizenship pursuant to 8 U.S.C. § 1503(a) in the instant action.

Instead, Petitioner's citizenship claim can be raised during the course of removal proceedings, as Petitioner did in his November 15, 2004 motion to reopen his removal proceedings, which the BIA granted on January 26, 2005. After the BIA denied, on July 20, 2005, Petitioner's request to terminate the removal proceedings, finding Petitioner failed to establish citizenship derivative of his mother's naturalization, Petitioner

---

[6] That Petitioner did not, prior to the commencement of removal proceedings against him, assert he was a United States national derivative of his mother naturalization on Petitioner's eighteenth birthday is evident by the BIA's statement in the September 5, 2001 decision observing that Petitioner's "mother became a United States citizen in 1991, when [Petitioner] was 18 years old, and it does not appear that [Petitioner] derived United States citizenship because of her naturalization." Respondent's Exh. A at 71.

appealed the IJ's decision to the BIA and, on November 21, 2005, the BIA dismissed the appeal, thereby rendering the Final Order of Removal on November 21, 2005.

Because Petitioner was unsuccessful in challenging his lack of citizenship at the removal stage, Petitioner's sole remaining avenue for relief, by way of a declaration of derivative citizenship from the federal courts, was pursuant to 8 U.S.C. § 1252(b), which provides for a petition for review to be filed "with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). If such an action is erroneously filed in the district court, the district court must transfer the action to the appropriate court of appeals. 28 U.S.C. § 1631 (permitting district court in which an action is erroneously filed to "in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed."). *Paul v. Immigration and Naturalization Service*, 348 F.3d 43, 46 (2d Cir. 2003) (observing that where a habeas petition for review of BIA's deportation decision is mistakenly, but timely, filed in district court, the district court is obligated to transfer such action to the appropriate court of appeals with jurisdiction over the matter). Such an action, however, must be filed "not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1).

Nevertheless, more than 30 days elapsed since the Final Removal Order and the commencement of the instant action, and "[8 U.S.C.] § 1252(b)(1)'s 30-day time limit is 'a strict jurisdictional prerequisite.'" *De Ping Wang v. Department of Homeland Security*, 484 F.3d 615, 618 (2d Cir. 2007) (bracketed material added) (quoting *Malvoisin v. INS*, 268 F.3d 74, 75 (2d Cir. 2001)). As such, because jurisdiction over the petition would

have been lacking in the Second Circuit Court of Appeals had it been filed in such court on the date the instant petition was filed in the Eastern District of New York, *i.e.*, June 27, 2007, transfer under 28 U.S.C. § 1631 is not permitted. *De Ping Wang*, 484 F.3d at 618 (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005) ("[C]ourts will not waste judicial resources by transferring a case that is clearly doomed.")). Moreover, because no court would have jurisdiction to hear Duarte-Ceri's petition were it to be transferred elsewhere, this aspect of the petition seeking a judicial determination of citizenship deriving from his mother's naturalization must be DISMISSED. *Id*.

**2.    Continued Detention**

Insofar as Petitioner seeks release from ICE custody, Petitioner has failed to establish that his repatriation to the Dominican Republic is unlikely as required to establish a constitutional violation based on his continued detention pending removal. The Supreme Court has held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). Detention of an alien in ICE custody for a 90-day period of removal is specifically authorized by INA § 241(a)(1)(A) - (C), codified at 8 U.S.C. § 1231(a)(1)(A) - (C). The Second Circuit has held that administrative detention is "presumptively reasonable" for the first six months and, after that time, it is the petitioner's burden to demonstrate "there is no significant likelihood of removal in the reasonably foreseeable future," which the Government must then rebut. *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (citing *Zadvydas*, 533 U.S. at 701). Further, where an alien is removable

based on an aggravated felony drug offense, ICE is authorized to detain the alien beyond the standard removal period of 90-days. 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(a)(1).

In the instant case, although to date the Dominican Consulate has refused to issue Petitioner a travel document pending resolution of Petitioner's derivative citizenship claim, this court's determination that no means exist, under applicable United States law, permitting further review of the BIA's November 21, 2005 decision that rendered the IJ's decision a Final Order of Removal establishes that Petitioner's derivative citizenship claim is without merit and futile. Petitioner has also failed to meet his burden, *Zadvydas*, 533 U.S. at 701, of establishing that the Dominican Consulate will continue to refuse to issue a travel document following this court's determination that Petitioner's derivative citizenship claim is without merit and not subject to any further legal review. In contrast, Respondent has submitted evidence demonstrating that DHS has successfully repatriated numerous aliens to the Dominican Republic, including 3,193 aliens in fiscal year 2004, 2,887 aliens in fiscal year 2005, and 2,678 aliens in fiscal year 2006. Scott Declaration ¶ 29. Accordingly, insofar as Petitioner challenges his continued confinement in ICE custody, the petition should be DISMISSED.[7]

---

[7] Based on the court's analysis of Petitioner's claim, consideration of Respondent's contentions addressing the merits of Petitioner's derivative citizenship claim, Respondent's Memorandum at 20-26, is unnecessary.

**CONCLUSION**

Based on the foregoing, the petition should be DISMISSED; the Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   June 3, 2009
         Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Petitioner and the Respondent.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: June 3, 2009
Buffalo, New York